**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>OHIO SKILL GAMES INCORPORATED,<br><br>                        Debtor. | In Proceedings Under Chapter 11<br><br>CASE NO. 08-60560<br><br>ADV. NO. 08-6049 |
| OHIO SKILL GAMES INCORPORATED,<br><br>               Plaintiff-Appellee,<br><br>    v.<br><br>PACE-O-MATIC, INC.,<br><br>             Defendant-Appellant. | JUDGE RUSS KENDIG<br><br><br><br>**PACE-O-MATIC, INC.'s MOTION FOR LEAVE TO APPEAL** |

Pace-O-Matic, Inc. ("POM"), by and through its undersigned counsel, hereby submits this motion for leave to appeal the Memorandum of Opinion (the "Opinion") [Docket No. 82] and the Order Denying, in Part, Debtor's Motion for Summary Judgment and Denying Defendant's Motion for Summary Judgment (the "Order") [Docket No. 83] entered by the United States Bankruptcy Court for the Northern District of Ohio (Kendig, J.) on July 8, 2010. POM respectfully requests that this Court grant it leave to appeal from the Opinion and Order because the ruling involves a controlling question of law, there exists a substantial ground for a difference of opinion, and an immediate appeal would materially advance the ultimate termination of this adversary proceeding. In further support hereof, POM states as follows:

{00865813.DOC;1 }

## I.      Preliminary Statement

The adversary proceeding below arose from a License Agreement between the Debtor, Ohio Skill Games Incorporated (the "Debtor"), and POM, under which the Debtor was to distribute certain skill-based amusement games and the proprietary software needed to operate the games.  Following a change in Ohio law regarding the legality of certain of those games (and a subsequent raid of the Debtor's offices by government officials), the Debtor found itself in default and unable to perform under the License Agreement.  The Debtor's Chapter 11 filing soon followed, and the Debtor brought the adversary proceeding seeking to enforce the License Agreement against POM.  Both parties moved for summary judgment, and the Bankruptcy Court, relying on the non-binding, plainly minority position of a different Circuit, held that the Debtor was entitled to a trial to prove that it could still perform under the License Agreement and thereby continue to hold POM to its obligations thereunder.  POM respectfully disagrees with the Bankruptcy Court and believes that an immediate appeal of the Bankruptcy Court's decision is proper.

This Court should grant POM leave to appeal the Opinion and Order because the Bankruptcy Court, rather than following the clear majority of Circuit Courts of Appeals that have ruled on the issue, instead followed the minority view.  The Bankruptcy Court held that Section 365(c)(1) of the Bankruptcy Code[1] does not bar the Debtor from assuming the License Agreement (defined below), even though applicable law excuses POM from accepting performance from or rendering performance to a third party and where, as here, POM does not consent to the Debtor's assumption of the License Agreement.  As discussed herein, this matter involves a controlling question of law (the interpretation of Section 365(c)(1)), there exists a

---

[1]      All references to statutory sections are to the United States Bankruptcy Code unless otherwise noted.

{00865813.DOC;1 }                              2

substantial ground for a difference of opinion (there is no binding Sixth Circuit law on the issue and there is a split in the Circuit Courts of Appeals on the issue), and an immediate appeal would materially advance the ultimate termination of the adversary proceeding.

Section 365(c)(1) allows "applicable law" to excuse a party "from accepting performance from or rendering performance to" a third party, absent such party's consent to assignment or assumption. The plain language of Section 365(c)(1) "links nonassignability under 'applicable law' together with a prohibition on assumption in bankruptcy." In re Catapult Entm't, Inc., 165 F.3d 747, 749 (9th Cir. 1999), citing 1 David G. Epstein, Steve H. Nickles & James J. White, BANKRUPTCY § 5-15 at 474 (1992). *In other words, Section 365(c)(1), by its terms, bars a debtor-in-possession from assuming an executory contract without the non-debtor's consent where applicable law precludes assignment of such contract to a third party*. Catapult, 165 F.3d at 749. In this case, the License Agreement granted the Debtor the right to use POM's trademarks and copyrights, but an assignment of POM's trademarks and copyrights without POM's consent is prohibited by applicable federal trademark and copyright laws. Those laws specifically protect POM from the non-consensual assignment of the trademarks and copyrights to a third party, so the Debtor lacks the ability to assume the License Agreement as a matter of law, absent POM's consent. Accordingly, because the Debtor cannot, as a matter of law, assume the License Agreement absent POM's consent (and POM does not consent), the Bankruptcy Court's Opinion and Order should be reversed and the License Agreement should be deemed rejected as of the Petition Date. Moreover, that appeal should occur now, rather than after a trial, because it is ripe for review and a ruling in POM's favor on this narrow legal issue will dispense with the need for a trial.

{00865813.DOC;1 }                                              3

## II.       Statement of Material Facts

1.        POM is engaged in the business of designing, developing and licensing skill-based amusement games and the proprietary software needed to operate the games.

2.        On April 29, 2007, POM, as manufacturer and licensor, and the Debtor, as licensee and distributor, entered into an Amended and Restated Master Software License and Distribution Agreement (the "License Agreement").  The License Agreement provided, among other things, for the Debtor to act as a distributor of certain of POM's skill-based amusement games ("Covered Games") within the states of Ohio, Massachusetts, Michigan and Hawaii.

3.        The Covered Games operated through two means:  (i) proprietary software developed by POM (the "Software") and (ii) an electronic "Fill System," which is a proprietary revenue generation refill system designed by POM that permits operators to access additional plays or continued use on each Covered Game on a per-play or other fee basis.

4.        Under the License Agreement, POM granted the Debtor a non-transferable, non-exclusive copyright license of the Software and trademark license of POM's trademarks and trade names used with the Covered Games for limited purposes, such as to distribute and sublicense the Software to third-party operators.  The License Agreement also granted the Debtor a non-transferable, non-exclusive license to access the Fill System in order to collect revenues and to pay a portion of the revenues to POM.

5.        On March 1, 2008 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

6.        On April 15, 2008, the Debtor commenced the above-captioned adversary proceeding against POM, seeking, *inter alia*, a declaratory ruling on the status of the License Agreement.

7.      On March 12, 2010, the parties filed cross-motions for summary judgment (Docket Nos. 70 and 71).  In its motion for summary judgment, POM sought judgment on all counts of the Complaint on the grounds that (1) applicable federal trademark and federal copyright law prohibit the Debtor from assigning the License Agreement without POM's consent, (2) Section 365(c) bars the Debtor from assuming the License Agreement, (3) the License Agreement must be rejected, and (4) the rejection of the License Agreement constitutes a breach that precludes the Debtor from enforcing its rights under the License Agreement.

8.      On July 8, 2010, the Bankruptcy Court entered its Opinion and Order, holding that Section 365(c)(1) does not bar the Debtor from assuming the License Agreement even though applicable law excuses POM from accepting performance from or rendering performance to a third party and even though POM does not consent to assumption of the License Agreement.  True copies of the Opinion and Order are attached hereto as Exhibit A and Exhibit B, respectively.

9.      Contemporaneously herewith, POM filed its Notice of Appeal, pursuant to Fed. R. Bankr. P. 8001(b) and 28 U.S.C. § 158(a), and its Statement of Election, pursuant to 28 U.S.C. § 158(c), Rule 8001(e) of the Federal Rules of Bankruptcy Procedure and Rule 8001-3 of the Rules of the Bankruptcy Appellate Panel of the Sixth Circuit, and has given appropriate notice thereof to counsel for the Debtor.

### III.    Issue on Appeal

10.     POM raises one legal issue on appeal:  Whether the Bankruptcy Court erred as a matter of law when it held that the Debtor can assume an executory contract even though applicable non-bankruptcy federal law bars it from assigning that executory contract without POM's consent.

### IV.    Standard for Granting POM an Interlocutory Appeal

11.    A district court may hear an appeal from an interlocutory order of a bankruptcy court judge where the district court grants leave to appeal.  28 U.S.C. § 158(a)(3); In re WCI Steel, Inc., 338 B.R. 1, 13 (N.D. Ohio 2005).  However, neither 28 U.S.C. § 158(a)(3) nor Fed. R. Bankr. P. 8003 provide any express criteria to guide the district court's discretion.  See WCI Steel, 338 B.R. at 13.  Generally, district courts rely, by analogy, on the circuit court standards governing interlocutory appeals, under 28 U.S.C. § 1292(b), to determine whether to grant leave to appeal from an interlocutory order of the bankruptcy court.  In re A.P. Liquidating Co., 350 B.R. 752, 755 (E.D. Mich. 2006); WCI Steel, 338 B.R. at 13; Simon v. Brentwood Tavern, L.L.C. (In re Brentwood Golf Club, L.L.C.), 329 B.R. 239, 242 (E.D. Mich. 2005); In re Eggleston Works Loudspeaker Co., 253 B.R. 519, 521 (6th Cir. BAP 2000).

12.    In applying 28 U.S.C. § 1292(b), the Sixth Circuit has required that the following elements to be met:  (1) the order involves a controlling question of law; (2) a substantial ground for difference of opinion exists; and (3) an immediate appeal may materially advance the ultimate termination of the litigation.  West Tenn. Chapter of Assoc. Builders & Contractors, Inc. v. City of Memphis (In re City of Memphis), 293 F.3d 345, 350 (6th Cir. 2002); see also In re Perdue, 2010 WL 907951, at *4 (N.D. Ohio March 11, 2010); A.P. Liquidating Co., 350 B.R. at 755; WCI Steel, 338 B.R. at 13; Brentwood Golf Club, L.L.C., 329 B.R. at 242; Eggleston, 253 B.R. at 521.

13.    Should the Court grant this Motion, the Court would review questions of law *de novo*.  Eggleston, 253 B.R. at 521 ("Interpretation of the Bankruptcy Code is a conclusion of law and is reviewed *de novo*.")

{00865813.DOC;1 }                                        6

### V.      An Interlocutory Appeal Is Appropriate in This Instance

#### A.      The Opinion and Order Involve a Controlling Question of Law

14.      In the instant matter, whether Section 365(c)(1) bars the Debtor from assuming the License Agreement is a controlling question of law.  "A legal issue is controlling if it could materially affect the outcome of the case."  City of Memphis, 293 F.3d at 351.  A determination that Section 365(c)(1) bars the Debtor from assuming the License Agreement would materially affect the outcome of this adversary proceeding because if the Debtor cannot assume the License Agreement, the License Agreement would be deemed rejected as of the Petition Date and the Debtor could not enforce its rights under the License Agreement.  Furthermore, the question of the proper interpretation of Section 365(c)(1) involves an abstract legal issue, not merely an issue that is free from a factual contest.  See A.P. Liquidating Co., 350 B.R. at 755.

15.      An appellate decision in POM's favor would eliminate the need for further extensive litigation in the adversary proceeding and resolve the majority of outstanding issues. Accordingly, the question at issue is not merely controlling, in the required sense that it "could" materially affect the outcome of the adversary proceeding, but it is absolutely dispositive of the adversary proceeding.  Thus, the first element for granting leave to appeal the Opinion and Order is undeniably satisfied.

#### B.      The Opinion and Order Decide an Issue as to Which There Is a Substantial Ground for a Difference of Opinion

16.      As the Bankruptcy Court stated in its Opinion, the controversy between the parties " . . . is based on the courts' differing interpretations of section 365(c)(1)," and the United States Court of Appeals for the Sixth Circuit has not yet taken a position with respect to these interpretations.  See Opinion, Ex. A at 6.

{00865813.DOC;1 }                                     7

17.     In applying Section 365(c)(1), four of the five Circuit Courts of Appeal that have addressed this issue have held that a debtor or a trustee <u>cannot</u> assume a contract that it cannot assign.     See <u>In re Sunterra Corp.</u>, 361 F.3d 257, 266 (4th Cir. 2004); <u>In re Catapult Entertainment, Inc.</u>, 165 F.3d 747, 752 (9th Cir. 1999) <u>In re James Cable Partners, L.P.</u>, 27 F.3d 534, 538 (11th Cir. 1994); <u>In re West Electronics, Inc.</u>, 852 F.2d 79, 83 (3rd Cir. 1988).   These four Circuits apply what has been termed the "hypothetical test," and they adhere to the plain language of Section 365 in examining whether, hypothetically (without looking to the individual facts of the case), the executory contract <u>could</u> be assigned under applicable law.  In short, if the debtor-in-possession lacks the hypothetical authority to assign a contract, then it may not assume the contract regardless of whether the debtor-in-possession has any <u>actual</u> intention of assigning the contract to another.  This "hypothetical test" has been adopted, as noted, by four of the five Circuits that have considered the issue.

18.     Notably, the Supreme Court recently denied a petition for certiorari in <u>In re N.C.P. Marketing Group</u>, 337 B.R. 230, 237 (D. Nev. 2005), <u>aff'd</u> 2008 WL 2192094 (9th Cir. Nev. 2008), <u>cert. denied</u>, 129 S. Ct. 1577 (2009) and thereby declined to reverse a Ninth Circuit Court of Appeals decision affirming a District Court's order that followed the majority rule and applied the hypothetical test, as POM is urging here.

19.     The First Circuit Court of Appeals, the sole circuit court in the minority, has held that debtors can assume executory contracts even if they cannot assign them.  See <u>Institut Pasteur v. Cambridge Biotech Corp.</u>, 104 F.3d 489, 493 (1st Cir. 1997).  Here, the Bankruptcy Court expressly followed the First Circuit rather than the majority.

20.     Where there is a "lack of binding Sixth Circuit law on this issue and . . . contradictory conclusions drawn by other circuits, there is a substantial ground for difference of

{00865813.DOC;1 }                                           8

opinion." Perdue, 2010 WL 907951, at *5; see also Eggleston, 253 B.R. at 521-22 (granting leave to appeal an interlocutory order based on lack of Sixth Circuit law and a split in circuit authority).

21.     The conflict among the Circuits creates substantial ground for a difference of opinion, so the second element for granting leave to appeal the Opinion and Order is satisfied.

> **C.      An Immediate Appeal Would Materially Advance the Termination of the Adversary Proceeding**

22.     This appeal directly addresses whether the Bankruptcy Code bars the Debtor from assuming the License Agreement, regardless of whether or not the Debtor could meet the "cure requirements" of Section 365(b).  If the position that POM urges is adopted, as four of the five Circuits considering the issue have done, then, simply stated, this adversary proceeding is over.

23.     "When litigation will be conducted in substantially the same manner regardless of [the court's] decision, the appeal cannot be said to materially advance the ultimate termination of the litigation."  City of Memphis, 293 F.3d at 351 (citation omitted).  However, as the Bankruptcy Court stated in its Opinion, "[i]f the [License] Agreement cannot be assumed, there is no reason to discuss cure of the [License] Agreement."  Opinion, Ex. A at 6.  In other words, if Section 365(c) bars the Debtor from assuming the License Agreement, there will be no need to litigate whether the Debtor can meet the cure requirements of Section 365(b).  Granting leave to appeal the Opinion and Order would thus materially advance the termination of this adversary proceeding.

24.     Furthermore, denying leave to appeal the Opinion and Order would burden the parties with additional legal expenses and result in a waste of judicial resources.  If no appeal is taken until after the Bankruptcy Court conducts a bench trial and makes a decision on the Section 365(b) cure issue, and then this Court or the Sixth Circuit reverses the Opinion and Order, the

08-06049-rk    Doc 87    FILED 07/22/10    ENTERED 07/22/10 14:40:30    Page 9 of 17

proceedings conducted in the Bankruptcy Court relating to the cure requirements of Section 365(b) would be entirely for naught.  "Thus, an immediate interlocutory appeal would promote judicial economy and not waste judicial resources or the time and money of the parties."  Perdue, 2010 WL 907951, at *5.  Therefore, resolving this issue before more proceedings are conducted in the Bankruptcy Court will advance the ultimate termination of the lawsuit.  Id.; A.P. Liquidating Co., 350 B.R. at 756.

25.     Accordingly, the third element for granting leave to appeal the Opinion and Order is plainly satisfied.

## VI.     Conclusion

26.     All of the elements required for leave to appeal from an interlocutory order of the Bankruptcy Court have been met.  There is a controlling question of law, a substantial ground exists for difference of opinion, and the immediate appeal of the Opinion and Order may materially advance the ultimate termination of the litigation.

WHEREFORE, POM respectfully requests that the Court enter an order granting POM leave to appeal the Opinion and Order, and ordering such further relief as is just and proper.

Dated:  July 22, 2010                          Respectfully submitted,

*/s/ Ronald M. McMillan*
JEAN R. ROBERTSON (0069252)
MARK I. WALLACH (0010948)
RONALD M. MCMILLAN (0072437)
CALFEE, HALTER & GRISWOLD LLP
1400 KeyBank Center
800 Superior Avenue
Cleveland, Ohio  44114
Telephone:  (216) 622-8200
Facsimile:  (216) 241-0816
Email: jrobertson@calfee.com
          mwallach@calfee.com
          rmcmillan@calfee.com

{00865813.DOC;1 }                          10

*Co-Counsel for Defendant Pace-O-Matic, Inc.*

JEFFREY L. TARKENTON
(admitted *pro hac vice*)
TODD D. ROSS
(admitted *pro hac vice*)
WOMBLE CARLYLE SANDRIDGE
& RICE, PLLC
1401 Eye Street, N.W., Seventh Floor
Washington, DC  20005
Telephone:  (202) 857-4450
Facsimile:  (202) 261-0050
Email:  jtarkenton@wcsr.com
         toross@wcsr.com

*Co-Counsel for Defendant Pace-O-Matic, Inc.*

{00865813.DOC;1 }                    11

## <u>CERTIFICATE OF SERVICE</u>

I, Ronald M. McMillan, hereby certify that Pace-O-Matic, Inc.'s Motion for Leave to

Appeal was electronically transmitted on or about July 22, 2010 via the Court's CM/ECF system

to the following parties who are listed on the Court's Electronic Mail Notices List:

- Ronald M. McMillan     rmcmillan@calfee.com, mmcgarry@calfee.com
- Michael J Moran     moranecf@yahoo.com
- Jean R. Robertson     jrobertson@calfee.com
- United States Trustee     (Registered address)@usdoj.gov

Dated: July 22, 2010                          */s/ Ronald M. McMillan*
                                               Ronald M. McMillan

{00865813.DOC;1 }

Slip Copy, 2010 WL 907951 (N.D.Ohio)
**(Cite as: 2010 WL 907951 (N.D.Ohio))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Ohio,
Eastern Division.
In re Dale L. PERDUE, Debtor.
Dale L. Perdue, Plaintiff,
v.
Federal Deposit Insurance Corporation as Receiver
for Washington Mutual Bank, Defendant.
**No. 1:04 MC 00073.**
**BNK Case. No. 00-13376.**
**Adv. Pro. No. 04-01268.**

March 11, 2010.

James F. Koehler, Spieth, Bell, McCurdy & Newell, Cleveland, OH, Susan M. Gray, Law Office of Susan M. Gray, Rocky River, OH, for Plaintiff.

Dan L. Makee, Paul W. Linehan, McDonald Hopkins, Cleveland, OH, James W. McGarry, Sean Paul Cronin, Goodwin Procter, Boston, MA, Thomas M. Hefferon, Goodwin Proctor, Washington, DC, for Defendants.

MEMORANDUM OPINION AND ORDER

PETER C. ECONOMUS, District Judge.

**\*1** This matter is before the Court upon Defendant's Motion to Vacate November 10 Order and Set Briefing Schedule, Or, in the Alternative, Motion to Certify Interlocutory Appeal ("Motion to Vacate"). (Dkt.# 24). Also before the court is Plaintiff's Memorandum in Opposition. (Dkt.# 26). Additionally, Defendant has filed a Reply. (Dkt.# 27).

**I. BACKGROUND**

On April 6, 2005, this Court issued an Order deny-

ing Defendants' Motion to Withdraw Reference of Adversary Proceeding. (Dkt.# 8). On April 25, 2005, Defendants filed a motion which requested that the Court reconsider its April 6, 2005, Order, and argued that Ohio's policy on attorneys' fees was preempted by the Home Owners Loan Act, 12 U.S.C. § 1461 ("HOLA"), and thus that mandatory withdrawal was necessary. (Dkt.# 9).

On December 19, 2008, while the Motion for Reconsideration was pending, Defendant Washington Mutual Bank ("WMB") filed a Motion to Substitute Party. (Dkt.# 13). That Motion was granted by this Court on December 30, 2008, and Federal Deposit Insurance Corporation ("FDIC") was substituted in its capacity as a Receiver for WMB as Defendant in the instant matter. (Dkt.# 14). As a result of the substitution, the case was initially stayed for 90 days, and then was again stayed until August 14, 2009, to allow Plaintiff to exhaust his mandatory administrative claims under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101-73, 103 Stat. 183 (1989) ("FIRREA"). On October 30, 2009, at the expiration of the second stay, Plaintiff moved to have the case moved to the active docket, (Dkt.# 19), which was granted by this Court on November 2, 2009.

On November 10, 2009, this Court issued an Order construing Defendant's April 25, 2005, Motion for Reconsideration as a motion pursuant to Federal Rule of Civil Procedure 59(e). This Court denied Defendant's Motion because Ohio's policy on attorneys' fees falls under HOLA's exception to preemption pursuant to 12 C.F.R. § 560.2(c). (Dkt.# 20). Defendant then filed the instant Motion to Vacate, requesting that this Court reconsider its Order on the Defendant's previous Motion for Reconsideration. (Dkt.# 24).

In its Motion to Vacate, Defendant argues that because the briefing on the first Motion for Reconsideration was completed in 2005, four years before this court issued its Order in November, 2009, the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 907951 (N.D.Ohio)
**(Cite as: 2010 WL 907951 (N.D.Ohio))**

Court's Order must be vacated. Alternatively, Defendant requests that this Court certify the issue for interlocutory appeal. For the reasons set forth below, Defendant's Motion to Vacate is **DENIED** and Defendant's alternative Motion to Certify Interlocutory Appeal is **GRANTED.**

## II. LAW AND ANALYSIS

Defendant has filed the instant Motion to Vacate pursuant to Rule 59(e), which is a motion to alter or amend a judgment. In the instant matter, Defendant is seeking to alter an Order on a previous motion to alter or amend a judgment. The Federal Rules of Civil Procedure do not specifically allow for or prohibit successive Rule 59(e) motions.

**\*2** As this Court stated in its previous Order, a motion to alter or amend judgment may be granted only if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice. *GenCorp, Inc. v. Am. Int'l Underwriters,* 178 F.3d 804, 833 (6th Cir.1999). Although courts have authority to do so, courts will only reconsider their prior ruling in rare and unusual circumstances. *Longs v. Wyeth,* 621 F.Supp.2d 504, 507 (N.D.Ohio 2009). In the instant matter, because Defendant's Motion to Vacate accuses this Court of failing to take note of recent binding case law, this Court will review the Motion to Vacate on the merits.

### A. *HOLA*

In its Motion to Vacate, Defendant argues that "there have been major developments in the case law concerning the preemption of state law under HOLA since 2005, when briefing on the previous Motion for Reconsideration was completed. (Dkt. # 24-1 at 2). However, contrary to Defendant's argument that "this Court was not given the benefit of considering this controlling precedent," (Dkt. # 24-1 at 7), this Court did consider the most recent case law in its Order.

Defendant argues that in *State Farm Bank, FSB v. Reardon,* 539 F.3d 336 (6th Cir.2008), a case binding on this Court, the Sixth Circuit engaged in broad HOLA preemption analysis, contradicting the conclusion reached by this Court in its November 10, 2009, Order. Additionally, Defendant argues that other circuit cases have applied field preemption analysis to HOLA regulations. *See Silvas v. E\*Trade Mortgage Corp.,* 514 F.3d 1001 (9th Cir.2008).

In *State Farm Bank,* the court held that the state regulations at issue in that case were preempted by HOLA. However, the Sixth Circuit came to that conclusion because they "fit[ ] within the categories of state laws that are *expressly* preempted by OTS regulations." *State Farm Bank,* 539 F.3d at 341 (emphasis added). The court then distinguished express preemption, which "exists where either a federal statute or regulation contains explicit language indicating that a specific type of state law is preempted," from implied preemption, which is "subdivided into 'field preemption' and conflict preemption.' " *Id.* at 341-42. Therefore, *State Farm Bank* could not have been applying field preemption analysis because field preemption only occurs in implied preemption cases, not where express preemption applies. In discussing the scope of preemption under 12 C.F.R. § 560.2, the Sixth Circuit noted that the regulation does not only preempt state laws that "directly regulate federal savings associations," but "preempts laws 'affecting the operations of federal savings associations.' " *Id.* at 345 (quoting § 560.2(a)). However, § 560.2(c) explicitly excepts from preemption laws which only "incidentally affect the lending operations of Federal savings associations." 12 C.F.R. § 560.2(c). Therefore, as this Court's November 10, 2009, Order held that the state regulation at issue, attorneys' fees, fell under § 560.2(c), that determination is not affected by the decision in *State Farm Bank* that a state regulation governing exclusive agents is expressly preempted under § 560.2(b).

**\*3** Defendant also argues that field preemption ap-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 907951 (N.D.Ohio)
**(Cite as: 2010 WL 907951 (N.D.Ohio))**

plies to HOLA generally. (Dkt. # 24-1 at 7). *See Silvas,* 514 F.3d at 1004 ("we agree, however, with the district court, and hold that *field* preemption applies") (emphasis in original). However, even while making a broad statement that field preemption applies, the Ninth Circuit recognized that OTS developed a three step test for determining if a state law is preempted by § 560.2. *Id.* at 1005. First, a court must determine if the state law is expressly preempted under subsection § 560.2(b). If the law is not covered, the court must decide if the law affects lending. If it does, a presumption arises that the law is preempted, unless it falls within the confines of § 560.2(c), which is to be interpreted narrowly. *Id.* Again, because this Court's Order held that Ohio's law on attorneys' fees falls under the exception listed in § 560.2(c), it is consistent with *Silvas.* Additionally, if the Sixth Circuit had wanted to adopt the broad field preemption reasoning in *Silvas* it could have, as the Sixth Circuit in *State Farm Bank* cited *Silvas* multiple times. *See State Farm Bank,* 539 F.3d at 342, 344.

Neither *State Farm Bank* nor *Silvas* require this Court to reconsider its decision that Ohio's policy on attorneys' fees does not fall under § 560.2(b)'s express preemptions and is contained within § 560.2(c)'s exception for laws which only incidentally affect lending. Therefore, HOLA preemption does not require a mandatory withdrawal from the Bankruptcy Court.

**B. *FIRREA***

Defendant also argues that the substitution of FDIC as Receiver for WMB as Defendant requires the application of FIRREA, which was not applicable in 2005 when the parties briefed the question of whether withdrawal of the reference was necessary. (Dkt. # 24-1 at 5). Defendant maintains that FIRREA will be applicable in three ways: (1) to determine whether Plaintiff may bring an action on behalf of a putative class or whether each individual in the class must have exhausted the administrative claims process; (2) to determine whether 12 U.S.C. § 1821(j) divests the court of subject matter jurisdiction, and (3) to determine whether 12 U.S.C. § 1825(b)(3) bars Plaintiff from recovering any form of punitive relief. (Dkt. # 24-1 at 5-6).

This Court does not dispute that FIRREA will be applicable to the instant matter because of the substitution of the FDIC as Receiver for WMB. However, the fact that FIRREA will be applied in the instant matter does not require the reference to be withdrawn.

As stated in this Court's Order on Defendants' Motion to Withdraw Reference of Adversary Proceeding, withdrawal is only mandatory when substantial and material consideration of non-Bankruptcy Code law is necessary. (Dkt. # 8 at 3). This "substantial and material" consideration approach is the majority approach, and has been adopted by nearly all the districts in the Sixth Circuit, including the Northern District of Ohio. *See Holland v. LTV Steel Co.,* 288 B.R. 770, 773 (N.D.Ohio 2002). *See also Angelucci v. Farmers Bank & Trust Co. (In re Angelucci),* No. 09-70-JMH, 2009 U.S. Dist. LEXIS 24233, *6, 2009 WL 798805 (E.D.Ky. March 23, 2009); *Anderson v. Countrywide Home Loans, Inc. (In re Anderson),* 395 B.R. 7, 11 (E.D.Mich.2008). Substantial and material consideration means that the claim requires not only the application of non-Bankruptcy Code law, but entails *significant* interpretation of non-Bankruptcy Code law. *Holland,* 288 B.R. at 773. No withdrawal is necessary if the Bankruptcy Court may conduct a straightforward application to a particular set of facts. *Sicherman v. Crosby (In re Rivera),* 1:05-MC-065, 2005 U.S. Dist. LEXIS 23304, *5, 2005 WL 4001273 (N.D.Ohio October 12, 2005).

**\*4** Several courts have determined that the application of FIRREA to an adversary proceeding would not require material and substantial consideration of non-Bankruptcy Code law so as to require mandatory withdrawal. *See, e.g., In re Sahni,* 227 B.R. 748, 751 (D.Kan.1998) (concluding that application of the fraudulent conveyance provision of FIRREA does not require withdrawal). Further, another court

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 907951 (N.D.Ohio)
**(Cite as: 2010 WL 907951 (N.D.Ohio))**

found that application of 12 U.S.C. § 1821(j), one of the provisions at issue in the instant matter, did not require withdrawal.  *In re CIS Corp.,* 140 B.R. 351 (S.D.N.Y.1992).

Application of FIRREA to the instant matter will not require significant interpretation of non-Bankruptcy Code law. The Bankruptcy Court is perfectly capable of applying the provisions of FIRREA, including the jurisdictional provision, to the facts at hand. Mandatory withdrawal of the reference is not necessary and, therefore, this Court declines to vacate its November 10, 2009, Order.

**C.** *Interlocutory Appeal*

Defendant requests, in the alternative, that if this Court denies the Rule 59(e) Motion to Vacate, that this Court enter an order certifying the November 10 Order and this order denying the motion to vacate the November 10 Order for an immediate interlocutory appeal.

Pursuant to 28 U.S.C. § 1292(b), an otherwise non-appealable issue may be certified for appeal if a district judge is of the opinion that an order: (1) involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion (3) and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. *See In re Lee Way Holding Co.,* 115 B.R. 586, 591 (S.D.Ohio 1990). The moving party has the burden to establish "exceptional circumstances warranting review of an interlocutory order." *Mason v. Massie,* 335 B.R. 362, 369 (N.D.Ohio 2005) (citing *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 475, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978). While appellate review of an order denying withdrawal of a reference is uncommon, this Court finds that in the instant matter the elements needed to certify for appeal an interlocutory order have been met. *See Caldwell-Baker Co. v. Parsons,* 392 F.3d 886, 888 (7th Cir.2004).

The first element needed to certify an appeal is that

the issue must involve a controlling question of law. In the instant matter, whether the adversary proceeding must be withdrawn to the district court is a controlling question of law. "A legal issue can be deemed controlling 'if it could materially affect the outcome of the case.' " *St. James Inc. v. Am. Specialty Cars Holdings, LLC,* 386 B.R. 187, 195-96 (E.D.Mich.2007) (quoting *W. Tenn. Chapter of Assoc. Builders & Contractors, Inc. v. City of Memphis (In re City of Memphis),* 293 F.3d 345, 351 (6th Cir.2002)). In the instant matter, Defendant argues that application of FIRREA affects whether the court has jurisdiction, as well as the class on whose behalf Plaintiff brings suit. Therefore, the issue involves a controlling question of law.

**\*5** The second element for certification of appeal is that there must be a substantial ground for difference of opinion. There is very little, if any, Sixth Circuit law on whether mandatory withdrawal is appropriate in the context of FIRREA. Moreover, courts in other circuits have taken conflicting views. In *Franklin Sav. Ass'n v. Office of Thrift Supervision,* 150 B.R. 976 (D.Kan.1993), the court found that application of FIRREA would not "entail the simple or routine application of the law to the facts," and thus that withdrawal was appropriate. *Id.* at 981-82. However, a more recent case in the same district held that the adversary proceeding would not require substantial and material consideration of FIRREA, and thus denied the withdrawal. *In re Sahni,* 227 B.R. at 751. In *In re CIS Corp.,* the court, while noting that a court in the Tenth Circuit found withdrawal on the jurisdictional issue of FIRREA mandatory, held that the same issue "does not mandate withdrawal." *Id.* at 351. Given the lack of binding Sixth Circuit law on this issue and the contradictory conclusions drawn by other circuits, there is a substantial ground for difference of opinion.

The third element needed to certify an appeal is that an immediate appeal must materially advance the ultimate termination of the lawsuit. In the instant

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 907951 (N.D.Ohio)
**(Cite as: 2010 WL 907951 (N.D.Ohio))**

matter, certifying the issue for appeal would advance the ultimate termination of the lawsuit. If no appeal was taken until after the Bankruptcy Court made a decision, and then the Sixth Circuit disagrees with this Court that mandatory withdrawal is not appropriate, the proceedings conducted in the Bankruptcy Court would be "void ab initio." *In re Lee Way Holding,* 115 B.R. at 591. Thus, an immediate interlocutory appeal would promote judicial economy and not waste judicial resources or the time and money of the parties. *Official Comm. Of Unsecured Creditors v. Qwest Communs. Corp. ( In re A.P. Liquidating Co.),* 350 B.R. 752, 756 (E.D.Mich.2006). Therefore, resolving this issue before proceedings are conducted in the Bankruptcy Court will advance the ultimate termination of the lawsuit.

All of the elements for certification of appeal have been met. There is a controlling issue of law on which there is substantial ground for difference of opinion, and the appeal will materially advance the termination of the lawsuit. Therefore, this Court certifies the issue of whether FIRREA or HOLA require a mandatory withdrawal from the Bankruptcy Court for immediate appeal.

**III. CONCLUSION**

After considering Defendant's Rule 59(e) Motion to Vacate November 10 Order and Set Briefing Schedule, or, in the Alternative, Motion to Certify Interlocutory Appeal, there is no ground on which this Court must reconsider its Order from November 10, 2009. Neither *State Farm Bank* nor *Silvas* require this Court to hold that HOLA preemption requires a mandatory withdrawal from the Bankruptcy Court. Additionally, the application of FIRREA will not require substantial interpretation of non-Bankruptcy Code so as to require a mandatory withdrawal. Therefore, this Court again declines to reconsider its previous Order and Defendant's Motion to Vacate is hereby **DENIED.** (Dkt.# 24).

**\*6** However, Defendant moves in the alternative to

certify the issue for appeal to the Sixth Circuit. As there is a controlling issue of law on which there is substantial ground for difference of opinion, and the appeal will materially advance the termination of the lawsuit, Defendant's Motion for Certification of Appeal is hereby **GRANTED.**

**IT IS SO ORDERED.**

N.D.Ohio,2010.
In Re Perdue
Slip Copy, 2010 WL 907951 (N.D.Ohio)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT A

The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.



**/S/ RUSS KENDIG**

Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
|  | ) |  |
| OHIO SKILL GAMES INC., | ) | CASE NO. 08-60560 |
|  | ) |  |
| Debtor. | ) | ADV. NO. 08-6049 |
|  | ) |  |
| OHIO SKILL GAMES INC., | ) | JUDGE RUSS KENDIG |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) | **MEMORANDUM OF OPINION** |
| PACE-O-MATIC, INC., | ) | **(NOT INTENDED FOR** |
|  | ) | **PUBLICATION)** |
| Defendant. | ) |  |
|  | ) |  |

The parties filed cross-motions for summary judgment pursuant to Federal Rule of Bankruptcy Procedure 7056. Plaintiff-debtor, Ohio Skill Games Incorporated (hereafter "Debtor"), seeks summary judgment on counts one and three of its complaint, while Defendant Pace-O-Matic, Inc. (hereafter "Defendant") seeks summary judgment on a count for declaratory judgment. The parties filed responses opposing one another's motions. The issues between the parties center on the status of a prepetition business contract between the parties.

The court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding

under 28 U.S.C. 157(b)(2). The following constitutes the court's findings of facts and conclusions of law under Federal Rule of Bankruptcy Procedure 7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the Court.

## FACTUAL BACKGROUND

Debtor and Defendant were parties to an Amended and Restated Master Software License and Distribution Agreement dated April 29, 2007 (hereafter "Agreement"). The Agreement was signed by Michael Pace (hereafter "Pace"), Defendant's President and Chief Executive Officer, and Jay Young, Debtor's President. The Agreement amended a previous contract between the parties dating to 2004. At the time the Agreement was executed, Debtor was owned by three individuals: Jay Young, Jan Anasis and Mildred Kowell.

Defendant, designated as "Manufacturer" in the Agreement, designs and develops what it refers to as "skill-based amusement games." Debtor contracted to distribute the games as set forth in the Agreement (and is referred to as "Distributor" in the Agreement). The games utilize proprietary software, also designed and developed by Defendant. The Agreement contained clauses relating to Defendant's intellectual property, including section 2.5 captioned "License." At one point in the parties' relationship, Debtor had placed 3,500 games in Ohio, the peak of Debtor's distributorship under the Agreement.

The legality of the games that are the subject of the Agreement permeated the parties' relationship. (More detail on the legal challenges can be found in the Court's opinion dated April 21, 2009.) On October 25, 2007, laws governing the games were amended to remove the games from the definition of "skill-based amusement machine" under Ohio law. As a result, the games were no longer "skill" games, but games of chance, and therefore illegal.

At some point prior to October 2007, the State of Ohio seized the assets of Debtor, rendering performance of obligations under the Agreement impossible and Debtor effectively ceased operating. Most of the necessary duties, including collection of accounts, was temporarily shifted to Defendant, with Debtor's knowledge and consent.

The parties met subsequently, had discussions on their future business involvement, including how to alter the games to make them legal skill games, but never reached a formal consensus on the parties' future relationship. The parties' dealings are complicated by Debtor's loss of a key employee, Jay Young, and Defendant's opposition to Grant Kowell stepping in the shoes of Mr. Young.

Although Debtor's assets were returned at some point at 2008, the parties'

business relationship substantially deteriorated through this period, culminating in the issuance of a letter from Pace, in early February 2008, attempting to terminate the Agreement. As grounds, he cited the assignment of ownership interest from Mildred Kowell to her husband, Grant "Fuzzy" Kowell, as well as the lack of performance of "distribution functions" under the Agreement. Responsive correspondence on behalf of Debtor and/or its principals was issued on February 11, 2008. In turn, Defendant sent a second letter of termination, citing multiple breaches of the Agreement:

- Failure to use commercially reasonable efforts to actively increase the placement of covered games as stated in Paragraph 2.1.

- Failure to maintain an inventory of spare parts in violation of Paragraph 4.1(a).

- Failure to comply with any of the duties and obligations in Paragraph 4.1(b).

- Failure to properly operate and account for the Escrow Account referenced in Paragraph 4.2 or to see that referenced third parties were paid from said account.

- Failure of O.S.G. to pay hundreds of thousands of dollars in invoices from P.O.M. [Pace-O-Matic] which are now far past due, in violation of Paragraph 4.2 of the Agreement.

- Breach of Paragraph 7.2 by actual or *de facto* attempt to assign all duties, rights, and obligations under the Agreement to Grant "Fuzzy" Kowell, not to mention the unconsented to relinquishment of ownership of O.S.G. by two of its shareholders.

- Failure to utilize Game Distributor Agreements in violation of Paragraph 7.3 of the Agreement.

The letter was dated February 22, 2008 and signed by Mark N. Poovey, an attorney for Defendant.

Breaches of the Agreement are covered in Section 5.1:

Notwithstanding the foregoing, either party shall have the right to terminate this Agreement for cause at any time should the other party materially breach any covenant, representation or warranty made herein. Prior to a termination on such basis, the non-breaching party will provide the breaching party with written notice that the breaching party is not in compliance with this Agreement and such breaching party shall have thirty (30) days following such notice to cure the alleged default to the satisfaction of the non-breaking party; provided however, that if such breach cannot be cured within such thirty (30) day period, but (a) the breach is capable of cure, (b) the breaching party commences to effect a cure within such thirty (30) days period and (c) the breaching party diligently pursues such cure, such

party shall have a reasonable time to cure such default. Notwithstanding the foregoing, the non-breaching party may suspend performance under this Agreement during the cure period if the breach by the other party could reasonably be expected to result in a violation of applicable law.

Debtor filed a chapter 11 case on March 1, 2008. On April 24, 2008, Debtor filed an amended complaint initiating this adversary proceeding, seeking declaratory judgment "determining the rights, status and obligations of the parties to the Agreement," an accounting of funds collected by Defendant under the Agreement, and turnover of said funds. Defendant answered the complaint on May 19, 2008 and included counterclaims for declaratory judgment, breach of contract, recoupment, and accounting. Debtor now seeks to assume the contract; Defendant opposes the assumption. The Agreement contains a clause dealing with assignment.

7.2 Assignment

This Agreement and the duties, rights and obligations arising hereunder may be assigned by a party hereto only with the prior written consent of the other party which consent may not be unreasonably withheld; provided, that Manufacturer may assign this Agreement to any party directly or indirectly controlling it, controlled by it or under common control with it. For the purposes of this Section, "control" means the ownership of a majority of the equity interest in the entity and/or voting control.

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Motions for summary judgment are governed by Federal Rule of Bankruptcy Procedure 7056, which incorporates Federal Rule of Civil Procedure 56, and states, in applicable part:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Bankr. P. 7056. The movant bears the initial burden of proof, being tasked with the "responsibility of informing the . . . court of the basis for its motion, and identifying those portions [of the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In reviewing the evidentiary materials, the facts and inferences arising therefrom are to be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). If the movant successfully demonstrates the

0890060449kk Doc8721 FFILEED0070821100 EENTERREED0070821100154240230 Paagoe45o6f112

absence of apposite factual issues, the non-movant must refute the suggestion by establishing, from more than mere pleadings, the existence of facts giving rise to material questions. <u>Celotex</u>, 477 U.S. at 324 (referencing Fed. R. Civ. P. 56(e)).

## II.    Assumption of the Agreement

Debtor seeks to assume the contract under 11 U.S.C. § 365(a):

> (a) Except as provided in section 756 and 655 of this title and in subsections (b), (c) and (d) of this section, the trustee[1], subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

Although Debtor may challenge the defaults listed in the termination letters, Debtor argues that the defaults are inconsequential because, as of the petition date, Debtor still had an opportunity to cure the defaults, relying on section 365(b):

> (b)(1)   If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee--
>
> (A)   cures, or provides adequate assurance that the trustee will promptly cure, such default . . ., and
>
> (B)   compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C)   provides adequate assurance of future performance under such contract or lease.

Defendant opposes the assumption, arguing that Debtor's inability to assign the contract leaves it without the option to assume the contract. Defendant's position is founded on 11 U.S.C. §365(c):

> (c)   The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if--

---

[1] The parties do not dispute that the Debtor, as debtor-in-possession, can exercise the rights of the trustee. *See also* 11 U.S.C. § 1107(a).

> (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to any entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and
>
> (B)  such party does not consent to such assumption or assignment . . . .

The parties do not dispute the applicability of section 365, nor the existence of an executory contract.  Defendant clearly does not consent to the assumption or assignment of the Agreement by Debtor.  The basic issue is whether the contract can be assumed by Debtor.  If the Agreement cannot be assumed, there is no reason to discuss cure of the Agreement.

The controversy between the parties is based on differing interpretations of section 365(c)(1)(A).  Defendant, espousing the majority viewpoint, argues that since "applicable law" bars assignment of the underlying agreement, both assumption and assignment are prohibited.  *See* Perlman v. Catapult Entertainment, Inc. (In re Catapult Entm't, Inc.), 65 F.3d 747 (9th Cir. 1999).  Under this test, you presume that assignment is a foregone conclusion.  As described in Catapult, "a debtor in possession may not assume an executory contract over the non-debtor's objection if applicable law would bar assignment to a third party, even where the debtor in possession has no intention of assigning the contract in question to any such third party."  Catapult at 750 (citing In re James Cable, 27 F.3d at 537 (characterizing § 365(c)(1)(A) as presenting "a hypothetical question"); In re West Elecs. Inc., 852 F.2d 79, 83 (same)).  Actual intent is irrelevant.

Debtor's position is based on the minority viewpoint: that the agreement can be assumed under application of an "actual" test.  *See, e.g.*, Institut Pasteur v. Cambridge Biotech, 104 F.3d 489 (1st Cir. 1997); In re Aerobox Composite Structures, LLC, 373 B.R. 135 (Bankr. D. N.M. 2007).  Under this view, the actual intent of the party is material.  If assignment is not contemplated, the applicable law cannot bar assumption.

The Sixth Circuit Court of Appeals has not rendered an opinion on this particular conflict, but it did expound on section 365 in Rieser v. Dayton Country Club Co. (In re Magness), 972 F.2d 689 (6th Cir. 1992), which is instructive.  The Magness court specifically stated it was not addressing assumption: "we should make clear that we are not dealing with the right to *assume* the membership with all its baggage, thus permitting the debtor to play golf."  Magness at 694.  Assumption would have imposed duties, including the payment of dues, burdening the estate.  In Magness, the chapter 7 trustee sought to assign, through an auction process, Debtor's golfing membership interest in a country club.  The golfing membership interest was a special interest in the club because golfing memberships were limited in number, attendant with higher fees, and subject to specific transfer limitations.  Members who wanted to advance to a golfing membership

were required to pay a substantial fee and be placed on a waiting list. If successful, the trustee's assumption of the contract and sale would have bypassed the club's golfing membership system, potentially allowing someone who was not on the waiting list to obtain a golfing membership.

The case discusses the inter-play between bankruptcy code sections 365(c)(1) and 365(f)(1). Generally, a trustee can assume an executory contract under 11 U.S.C. § 365(a). The same general principle exists, by virtue of 11 U.S.C. § 365(f)(1), for assignments. Section 365(c)(1) provides the exception to these general rules. In <u>Magness</u>, the court reconciled the duplicate use of "applicable law" in both 365(c)(1)(A) and 365(f), ultimately determining that the "applicable law" referred to in section 365(c)(1) "address[es] the interest of the non-debtor third parties, rather than law relating to general prohibitions or restrictions on assignment of executory contracts covered by § 365(f)." <u>Id</u>. at 696. The court ruled against the trustee, concluding that the club could not be forced to accept performance from third-parties because the contract was personal between the debtor and the club. As a result, the trustee could not assign the interest.

The court recognizes that <u>Magness</u> attempted to address the difference between "applicable law" in section 365(f)(1) and use of the same term in section 365(c)(1). However, the definition cannot change based on the fact that the term "applicable law" is not used in section 365(a). As a result, this court must follow the interpretation of the <u>Magness</u> court. The section 365(c)(1)(A) exception applies equally to assumptions or assignments, as the specific language demonstrates. Thus, the court finds that, under the facts presented, the proper way to read the exception is in the following light: the debtor may not assume the Agreement if applicable law excuses Defendant from accepting performance from or rendering performance to a non-debtor third party regardless of clauses in the Agreement governing the rights to assign or delegate duties. Because the assumption would maintain the parties relationship under the Agreement, this is not a situation where Defendant will be forced to accept performance from an unknown third party when it contracted for those services from Debtor. Essentially, this is also equivocates adoption of Debtor's position and employment of the actual test.

This understanding does not create an absurd result. Debtor wants to assume the Agreement. The Agreement is the soul of Debtor's business and the inability to capitalize on the Agreement forced Debtor into Chapter 11. There has been no discussion of assigning this contract to a third party. Rather, Debtor seeks to cure the alleged defaults and continue operating under the Agreement. The ability to assume the contract is key to Debtor's survival. Thus the court would be remiss in overlooking the assumption issue in favor of the assignment issue. This type of factual distinctions has been noted. *See, e.g.,* <u>Murray v. Franke-Misal Tech. Group, LLC (In re Supernatural Foods, LLC)</u>, 268 B.R. 759 n.30 (Bankr. M.D. La. 2001) (finding that application of the "actual test" under section 365(c) arises "exclusively within the Chapter 11 context, where a debtor in possession wishes to assume executory contracts to maintain them for the estate, if applicable law prohibits only assignment, assumption is allowable"). On facts where assumption alone is contemplated, not assignment, courts tend toward adoption of the

actual test, or an interpretation favoring assumption. *See* <u>Summit Inv. and Dev. Corp. v. Leroux</u>, 69 F.3d 608 (1st Cir. 1995) (following chapter 11 bankruptcy filings by two general partners, court rebuffed non-bankruptcy general partner's attempt to enforce ipso factor provision in partnership agreement); <u>In re Footstar, Inc.</u>, 323 B.R. 566 (Bankr. S.D.N.Y. 2005); <u>In re GP Express Airlines, Inc.</u>, 200 B.R. 222 (Bankr. D. Neb. 1996); <u>In re American Ship Bldg Co., Inc.</u>, 164 B.R. 358 (Bankr. M.D. Fla. 1994); <u>Texaco Inc. v. Louisiana Land and Exploration Co.</u>, 136 B.R. 658 (M.D. La. 1992); <u>In re Cardinal Indus., Inc.</u>, 116 B.R. 964 (Bankr. S.D. Ohio 1990). Consequently, the distinction between assuming for the purposes of assigning versus only assuming an executory contract are noteworthy.

In some cases, such as <u>Magness</u>, the two cannot be severed because the inability to assign the contract would result in rejection. This is most notably seen in chapter 7 cases where a trustee seeks to sell the estate's interest in a contract but has no intention of performing under the contract. In a situation involving a chapter 7 trustee, the section 365(c)(1) exception would alleviate a party from accepting performance from, or rendering performance to, a chapter 7 trustee, thereby protecting the "personal" nature of the contract.

Allowing "applicable law" to drive the assumption determination, when said law may be entirely inapplicable, would allow creditors a potential windfall through a fast exit from their duties and obligations. Here, if Debtor cannot assume the contract, the likelihood of successful reorganization plummets. Allowing Debtor to assume the contract merely puts the parties in the position they were in on the day the bankruptcy was filed, leaving them both with the benefits, and detriments, of their bargain.

Defendant wants to be relieved of this contract by relying on "applicable law" that prevents assignment. Upon review of the Agreement, this would provide Defendant *more* relief than contracted. The Agreement does not prohibit assignment, but merely conditions it: "This Agreement and the duties, rights and obligations arising hereunder may be assigned by a party hereto only with the prior written consent of the other party which consent may not be unreasonably withheld . . . ." This is not a case where assignment was prohibited outright, but adopting Pace's position would have that result.

Considering all of the above, the court finds that, as of the petition date, Debtor could assume the contract subject to the default conditions set forth in 11 U.S.C. § 365(b). Section 365(c)(1)(A) is not a bar to assumption on the facts of this case.

### III.    Cure of the Agreement

After finding the Agreement can be assumed by Debtor, the court must now address the default issues raised by the parties. Section 365(b) contains three requirements for effectuating a cure of prepetition defaults: (1) cure the default, or provide adequate assurance of a prompt cure; (2) compensate, or provide adequate assurance of such compensation will be made, to a party who has suffered an "actual

pecuniary loss;" and (3) "provide adequate assurance of future performance." Debtor alleges it can provide the necessary compensation or adequate assurance to provide a cure under section 365(b), while Defendant disagrees. With regard to any monetary defaults, Debtor contends that the money Pace collected for Debtor under the Agreement could be used to cure the defaults. Defendant points out that Debtor has essentially ceased to exist, has no employees or operations, no money, and further argues that certain items simply are not capable of cure. Defendant argues that it is impossible for Debtor to provide adequate assurance of future performance because Debtor does not have qualified personnel to operate the business. It is clear that Defendant objects to Mr. Kowell taking over duties previously handled by Jay Young. The court will review the allegations of default individually.

Section 5.1 of the Agreement requires a party to provide written notice of termination for a "material" breach and allow the breaching party a minimum thirty days to cure the alleged breach. It is clear that prior to Debtor's filing, two termination letters were issued. The first was signed by Pace. It is attached as Exhibit D to Debtor's motion for summary judgment and is undated. Debtor claims that it received this letter "sometime in the first week of February." (Debtor's M. Summ. J., p. 7). Defendant does not dispute this contention, or argue for an earlier date, so the court will find that Debtor had notice of the termination on February 7, 2008. Consequently, as of the filing date of the petition, time remained for Debtor to cure the Agreement. Similarly, a second letter of termination was issued on February 22, 2008, so time to cure the breaches referenced in that letter also remained as of the petition date. The Agreement was not terminated prior to Debtor's bankruptcy filing.

In the first letter, Defendant cites the transfer of ownership of Debtor from Mildred Kowell to her husband as a breach. This is reiterated in the second letter, where Defendant cites a "[b]reach of Paragraph 7.2 by actual or *de facto* attempt to assign all duties, rights, and obligations under the Agreement to Grant "Fuzzy" Kowell, not to mention the unconsented to relinquishment of ownership of O.S.G. by two of its shareholders." (Debtor's M. Summ. J., Exh. D and E). Paragraph 7.2 governs assignment of the Agreement and does not prohibit the action complained of by Defendant. The clause governs assignment of the Agreement, not a transfer of stock by owners of one of the contracting parties. The change of ownership of Debtor did not alter the Agreement, nor the identity of the parties to the Agreement. The Agreement was made by Ohio Skill Games, Inc., not with an individual. The court finds no foundation for the alleged breach. At a minimum, it is not a "material" breach under the Agreement. Consequently, no cure is required.

The first letter also contains a general allegation that Debtor was failing to perform the "distribution functions or other duties required of Ohio Skill Games under the Agreement." (Debtor's M. Summ. J. Exh. D). This apparently relates to Debtor's obligations under Section 2 of the Agreement. However, the allegation of breach is vague. The second letter is more specific, but references one breach of Section 2: "[f]ailure to use commercially reasonable efforts to actively increase the placement of

covered games as stated in Paragraph 2.1." Under Section 2.2, the Agreement states: "[t]he minimum net Covered Game Placement requirements for Ohio have already been met."[2] No maximum requirements are established in the Agreement, nor are additional benchmarks outlined. As a result, Defendant's position is untenable. The court finds that when the Agreement was signed, Debtor had placed the required number of games in Ohio and thereby satisfied its obligations under Paragraph 2.1. The Agreement failed to establish any further performance benchmarks.

The bulk of the remaining items of default relate to Debtor's duties under Section 4 of the Agreement, titled "Game Servicing." The alleged breaches include:

- Failure to maintain an inventory of spare parts in violation of Paragraph 4.1(a).

- Failure to comply with any of the duties and obligations in Paragraph 4.1(b).

- Failure to properly operate and account for the Escrow Account referenced in Paragraph 4.2 or to see that referenced third parties were paid from said account.

- Failure of O.S.G. to pay hundreds of thousands of dollars in invoices from P.O.M. [Pace-O-Matic] which are now far past due, in violation of Paragraph 4.2 of the Agreement.

Additionally, Defendant claims a breach of Section 7.3: "[f]ailure to utilize Game Distributor Agreements in violation of Paragraph 7.3 of the Agreement."

Questions of fact abound in ascertaining whether these alleged defaults can be cured. For example, Debtor contends it has an inventory of spare parts and, to the extent Defendant finds it inadequate, it is willing to acquire an amount sufficient to cure the default. No supporting documentation has been was provided to describe Debtor possessed when the termination letter was issued, nor are their specifics on the how, or why, the parts inventory was deficient.

Further, the parties did not provide an itemization of the amounts collected by Defendant following seizure of Debtor's assets. To the extent that Debtor relies on those monies as both a cure and adequate assurance, the amount is material. It is also pertinent to Defendant's claims that hundreds of thousands of dollars are due to Defendant. The other items similarly involve questions of fact which are not appropriate for the court to decide on a motion for summary judgment.

## CONCLUSION

Since Debtor is not contemplating assignment, 11 U.S.C. § 365(c)(1) does not bar assumption. However, Debtor's ability to assume is subject to its ability to cure the

---

[2] The only issues presented in this adversary pertain to the Ohio activities.

defaults as outlined in section 365(b).  Questions of fact preclude summary judgment on the issue of whether Debtor can effectuate a cure.  Consequently, the Court will grant, in part, Debtor's request for summary judgment on count one, the declaratory judgment count.  Assumption of the Agreement will be approved subject to section 365(b).  In the same vein, Defendant's motion for summary judgment will be denied.

Debtor also moved for summary judgment on count three of its amended complaint seeking turnover.  The court finds Debtor failed to fully develop arguments on this issue, instead focusing on count one.  As a result, the Court finds that Debtor did not establish either the absence of genuine issues of material fact or its entitlement to judgment as a matter of law on count three.  Consequently, the motion for summary judgment will be denied as it pertains to the count for turnover.

An order will be entered forthwith.

#        #        #

**<u>SERVICE LIST</u>**

Michael J Moran
Gibson & Lowry
PO Box 535
234 Portage Trail
Cuyahoga Falls, OH 44222

Jean R. Robertson
Ronald M. McMillan
Calfee, Halter & Griswold LLC
1400 KeyBank Center
800 Superior Avenue
Cleveland, OH 44114

Jeffrey L. Tarkenton
Womble Carlyle Sandridge & Rice PLLC
1401 Eye St., N.W.
7th Floor
Washington, D.C.  20005

# EXHIBIT B

The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.



**/S/ RUSS KENDIG**

---

Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| OHIO SKILL GAMES INC., | ) | CASE NO. 08-60560 |
| | ) | |
| Debtor. | ) | ADV. NO. 08-6049 |
| | ) | |
| OHIO SKILL GAMES INC., | ) | JUDGE RUSS KENDIG |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER DENYING, IN PART,** |
| v. | ) | **DEBTOR'S MOTION FOR** |
| | ) | **SUMMARY JUDGMENT AND** |
| PACE-O-MATIC, INC., | ) | **DENYING DEFENDANT'S** |
| | ) | **MOTION FOR SUMMARY** |
| Defendant. | ) | **JUDGMENT AND SCHEDULED** |
| | ) | **FURTHER PRETRIAL** |
| | ) | |

The parties' cross-motions for summary judgment are now before the court. For the reasons contained in the corresponding Memorandum of Opinion, the court will **GRANT, IN PART,** Debtor's motion for summary judgment on count one of its amended complaint. Debtor is permitted to assume the Agreement subject to section 365(b). The motion is otherwise **DENIED,** including the motion for summary judgment on count three for turnover. Defendant's motion is also hereby **DENIED.**

Notice is hereby provided that a further pretrial conference in this adversary will be held on **August 4, 2010** at **10:45 a.m.** before the Honorable Russ Kendig, United States Bankruptcy Court, Ralph Regula Federal Building and United States Courthouse,

401 McKinley Ave., S.W., Canton, Ohio.  Parties may appear telephonically by contacting the court no less than twenty-four hours prior to the conference to provide a contact number.

It is so ordered.

#     #     #

**SERVICE LIST**

Michael J Moran
Gibson & Lowry
PO Box 535
234 Portage Trail
Cuyahoga Falls, OH 44222

Jean R. Robertson
Ronald M. McMillan
Calfee, Halter & Griswold LLC
1400 KeyBank Center
800 Superior Avenue
Cleveland, OH 44114

Jeffrey L. Tarkenton
Womble Carlyle Sandridge & Rice PLLC
1401 Eye St., N.W.
7th Floor
Washington, D.C.  20005

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| In re:<br><br>OHIO SKILL GAMES INCORPORATED,<br><br>          Debtor. | In Proceedings Under Chapter 11<br><br>CASE NO. 08-60560<br><br>ADV. NO. 08-6049 |
| OHIO SKILL GAMES INCORPORATED,<br><br>          Plaintiff-Appellee,<br><br>    v.<br><br>PACE-O-MATIC, INC.,<br><br>          Defendant-Appellant. | JUDGE RUSS KENDIG<br><br><br><br>**ORDER GRANTING MOTION OF DEFENDANT PACE-O-MATIC, INC. FOR LEAVE TO APPEAL** |

Upon consideration of the Motion for Leave to Appeal (the "Motion"), filed by

Defendant-Appellant Pace-O-Matic, Inc. ("POM"), and the entire record herein; and proper

notice of the Motion having been provided to all necessary and appropriate parties, and no

further notice being necessary; and the relief sought appearing reasonable and proper, and good

{00865856.DOC;1 }

and sufficient cause appearing therefor, it is hereby **ORDERED, ADJUDGED AND DECREED** that:

1. The Motion is GRANTED in its entirety; and

2. POM is granted leave to appeal the Opinion and Order.

# # #

{00865856.DOC;1 }